**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>FRANK N. TOBOLSKY<br><br>        *Defendant.* | Criminal No. 21-00303(NLH)<br><br>**Opinion** |

**APPEARANCES**:

Frank N. Tobolsky
41509-509
Fairton Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

    *Defendant appearing pro se*

Office of the United States Attorney
Jeffrey Brian Bender, Assistant U.S. Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101

    *On behalf of the United States of America*

**HILLMAN**, **District Judge**

    This matter comes before the Court upon Defendant Frank Tobolsky's "Expedited Request for Compassionate Release" pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 32.)[1] Defendant is currently an inmate at Federal Correctional Institution ("FCI") Fairton, serving a sentence imposed upon him

---

[1] References to "ECF" without additional reference to the case number are references to Crim No. 21-00303.

after entry of a guilty plea in 2021.

Defendant seeks early release or alternatively, placement in a halfway house or home confinement, so that he may care for his elderly mother who suffers from dementia and Alzheimer's Disease.

For the reasons stated below, Defendant's motion will be denied.

## BACKGROUND

On October 4, 2021, Defendant Frank Tobolsky pleaded guilty to Count One of an 8-Count Indictment charging Wire Fraud, 18 U.S.C. § 1343.  (ECF No. 18.)  Counts Two through Eight of the Indictment were later dismissed.  (ECF No. 31.)  These charges stemmed from conduct occurring in November 2013 through May 2016, during which time Defendant knowingly and intentionally devised a scheme to defraud Victim 1 of money and property under fraudulent pretenses, representations and promises.  (PSR ¶ 18.) Specifically, Defendant enriched himself using funds he fraudulently obtained from Victim 1 under the guise of creating an investment portfolio of personal loans to season ticket holders of the Philadelphia Eagles, a professional football team in Philadelphia, Pennsylvania. (PSR ¶ 19.)  Defendant primarily used these funds for gambling. (PSR ¶ 19.)

On November 17, 2022, Defendant was sentenced to a term of 48 months' imprisonment, followed by a 3-year term of

supervised release. (ECF No. 31.)[2]  Defendant was also ordered to pay restitution in the amount of $1,974,055.92, as well as a $100 special assessment. (ECF No. 31.)

On December 4, 2023, Defendant filed the instant motion, seeking compassionate release to care for his infirm mother. (ECF No. 32.)

## DISCUSSION

### I. Standard of Review

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Prior to bringing a motion for reduced sentence before the sentencing court, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." Id.  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify

---

[2] At the time of sentencing, Defendant was out on bond. (ECF No. 10.)  The court ordered that he surrender to begin serving his sentence "no earlier than February 15, 2023." (ECF No. 31 at 2.)  Defendant did in fact begin serving his term on February 15, 2023. (ECF No. 32 at 66.)

3

compassionate release." United States v. Sellers, Crim. No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if, after finding extraordinary and compelling reasons warrant a reduction, such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and that the applicable sentencing factors under § 3553(a) warrant a reduction. United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

II. **Analysis**

   A. **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)**

As a preliminary matter, this Court finds Defendant has satisfied the exhaustion requirements for bringing the instant Motion under 18 U.S.C. § 3852.  (ECF No. 33-1 at 1.)

In assessing this motion, the court recognizes recent changes to the Sentencing Guidelines Policy Statements regarding motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A). United States v. Shore, Criminal No. 07-66, 2023 U.S. Dist. LEXIS 197911, at *9 (E.D. Pa. Nov. 2, 2023) ("On April 27, 2023, the Sentencing Commission promulgated proposed amendments to U.S.S.G. § 1B1.13, the guideline policy statement addressing

4

compassionate release motions. The Amendments went into effect on November 1, 2023."); see also U.S. Sentencing Commission, "Adopted Amendments," Apr. 27, 2023, available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing "other reasons" catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act."). In view of these amendments to the Policy Statement regarding extraordinary and compelling reasons for a reduction in sentence, this Court will address Defendant's motion, filed after the effective date of the revised Policy Statement, on the basis of family circumstances.

### 1. Family Circumstances of the Defendant

As referenced above, the Policy Statement regarding motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A) has undergone changes that became effective on November 1, 2023. The new Policy Statement for USSG § 1B1.13 incorporates portions of former Commentary and Application Notes to the text of the Policy Statement and provides in relevant part:

5

> (b) *Extraordinary and Compelling Reasons*.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> \* \* \* \*
>
> > (3) *Family Circumstances of the Defendant*.—
> >
> > \* \* \* \*
> >
> > > (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S. Sent'g Guidelines Manual § 1B1.13(b)(3)(C), p.s. (Nov. 2023).

In this case, Defendant has provided various documents to demonstrate the alleged severity of his mother's condition and his father's inability to care for her alone. Among those are emails and email excerpts from his father that talk about estrangement from Defendant's brother, Phil, and issues surrounding the care of Defendant's mother in light of her declining health. (ECF No. 32 at 11-13, 57-60; ECF No. 34 at 2.)

The court takes seriously Defendant's concerns about his mother's health and analyzes whether he has shown "extraordinary and compelling reasons for his release" accordingly. Upon doing so, the court finds Defendant has not met that standard. First, the court finds instructive, although not determinative, the current guidance by the Sentencing Commission as incorporated by § 3582(c)(1)(A). Defendant has not pointed to recent evidence

that his mother is "incapacitated" (as intended for this purpose) or that he is the only available caregiver, which would militate toward release under the "extraordinary and compelling reasons" provision set forth in § 3582(c)(1)(A)(i).[3]

Courts in this district have looked to BOP Program Statement No. 5050.50 for guidance on the meaning of incapacitation and the showing a defendant must make to demonstrate he or she is the sole available caregiver. See United States v. Mason, No. 2:17-CR-191, 2021 U.S. Dist. LEXIS 114888, at *3 n.1 (D.N.J. June 21, 2021) (Defendant's request for early release to act as caregiver for son was denied because of "Defendant's failure to provide BOP with proof that his son's

---

[3] To the extent Defendant argues the non-precedential value of various cases cited by the government (ECF No. 37 at 8), courts have long recognized the usefulness of considering persuasive but non-binding authority when no precedential cases exist that are factually or legally on point.  See Lankford v. City of Clifton Police Dep't, 546 F. Supp. 3d 296, 314 (D.N.J. June 29, 2021) ("Though Santini is non-precedential, I find it significant that it identified 'no cases directly on point' suggesting that the officers' conduct was unlawful."); Sklodowski v. Saul, Civil Action No. 18-10447, 2020 U.S. Dist. LEXIS 44458, at *11 (D.N.J. March 10, 2020) (recognizing reliance on non-precedential case law for purposes of distinguishing facts in matter before the court); In re Interpool, Inc. Sec. Litig., Civ. No. 04-321, 2005 U.S. Dist. LEXIS 18112, at *55 n.10 (D.N.J. Aug. 16, 2005) ("While not precedential, this Court finds this cited authority persuasive and agrees with its reasoning."); Rosedale Manor Assocs., LLP v. Borough of Madison, Civil Action No. 04-341, 2005 U.S. Dist. LEXIS 53524, at *8 n.2 (D.N.J. April 15, 2005) (referencing district court's use of "a non-precedential case addressing a unique situation.").

7

mother was terminally ill or incapacitated; that she was the only available caregiver for their son."); United States v. Doolittle, Criminal No. 19-501, 2020 U.S. Dist. LEXIS 127801, at *8 (D.N.J. July 21, 2020)(BOP Program Statement No. 5050.50 requires "a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse.").

The Program Statement provides for two different types of caregiver relief: death or incapacitation of a family member caregiver of an inmate's child; and, incapacitation of a spouse or registered partner.  BOP Program Statement No. 5050.50 §§ 5, 6.  Both Defendant and the government rely upon the "incapacitation" criteria of the latter to assist in demonstrating their respective points.  (ECF Nos. 32 at 21, 33 at 3, 37 at 3-5.)  Subsection 6 of the Statement provides as follows:

> For these requests, "incapacitation" means the inmate's spouse or registered partner has:
>
> ■ Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
>
> ■ A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental

8

> capacity or function), but may not be confined to a bed or chair.
>
> For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

BOP Program Statement No. 5050.50 § 6.

Defendant has not made such a showing. Although he has provided visit summaries from his mother Rochelle Tobolsky's appointments with her primary care doctor in July and August 2023, the reasons for her appointments were a skin rash and knee pain, respectively. (ECF No. 32 at 34, 41.) Mrs. Tobolsky's "encounter diagnos[es]" by her family doctor included "Agitation [d]ue to Dementia" and Alzheimer's Disease on both occasions. (ECF No. 32 at 35, 40.) However, there is no indication of the last time Mrs. Tobolsky was evaluated or received treatment by a specialist who could reassess all of the medications she is currently taking and potentially offer better treatment for these issues. In fact, when she went to her family doctor for the skin rash in July 2023, he suggested she follow up with a neurologist for the dementia and Alzheimer's issues. (ECF No. 32 at 45.) Defendant provides no documentation to show she did so.

Further, Defendant's claim that he is "the only available caregiver" and that his father, Nelson, is not a long term

9

solution because of his "declining health" (ECF No. 32 at 3) is not backed by any documentation that Nelson Tobolsky will be completely unavailable and that there is no one else who can care for his mother. See United States v. Yarbrough, 2:06-cr-00203-1, 2023 U.S. Dist. LEXIS 221526, at *7 (W.D. Pa. Dec. 13, 2023) ("[T]he defendant must be 'the only' available caregiver for the incapacitated parent."); United States v. Dunich-Kolb, No. CR 14-150, 2022 U.S. Dist. LEXIS 31146, at *18 (D.N.J. Feb. 14, 2022) ("One common thread, whether relief is granted or denied, is the requirement that the prisoner be the *only* person available to provide care to a seriously ill relative.") (emphasis in the original).  In fact, one email provided by Defendant is an acknowledgement by his father of the availability of other caregivers for Defendant's mother.  (ECF No. 32 at 32.)  Further, although emails by and between Defendant and his father during a very brief span of time appear to indicate a schism between Defendant's brother and father (ECF No. 32 at 11, 58-59), this does not necessarily mean Phil Tobolsky will never be willing or able to assist with his mother's care.[4]  United States v. Milchin, Criminal Action No.

---

[4] In an email dated June 15, 2023, Nelson Tobolsky informs Defendant he is "supposed to meet with [Phil] Saturday."  (ECF No. 32 at 11.)  In another email dated May 6, 2023, Nelson Tobolsky writes "you [sic] brother turned 60[;] I had forgotten and naturally I got reamed out."  (ECF No. 32 at 13, 59.)  The following week, he writes "Phil is pissed at me right now, so I

17-00284-1, 2023 U.S. Dist. LEXIS 203312, at *3 (E.D. Pa. Nov. 13, 2023) ("[A]lthough [the defendant's] brother allegedly has had no contact with the family, this does not make him permanently 'unavailable.'"); United States v. Garcia, Crim. No. 21-884, 2023 U.S. Dist. LEXIS 186930, at *8-9 (D.N.J. Oct. 18, 2023) ("The attached note from [the defendant's] mother's doctor states that she requires 'constant treatment and assistance' for her [various health issues], but this information does not provide detail about how her caregivers are responding to these conditions, nor does it support releasing [the defendant] to be one of them.  Furthermore, [the defendant] has not shown that he is his mother's only available caregiver."); Dunich-Kolb, 2022 U.S. Dist. LEXIS 31146, at *17 ("The brother has submitted a letter stating that, in light of his family responsibilities and status as an 'essential' Verizon employee, he is too busy to help. No doubt it would be an inconvenience to take over some of the caretaker responsibilities, assuming that he is not doing so already. It is not uncommon, however, for a criminal sentence to impose burdens, sometimes severe ones, on family members.") (internal citation omitted).

    Finally, Defendant informs this Court that upon release, he

---

don,t [sic] think he is about to do anything because I forget [sic] to congratulate Alex on his graduation from Stockton while everyone else did, I offer no excuses, plus i [sic] did not send a gift., [sic] however, I will rectify."  (ECF No. 32 at 58.)

11

has "terrific fulltime employment lined up in Marlton, NJ, to start March 2024[.]" (ECF No. 32 at 4.) If that is the case, he will be unable to serve as the "sole" and "only available caregiver" he contends his mother so urgently needs. (ECF No. 32 at 3, 11.)

While the court is sympathetic to the difficulty that Defendant's mother's situation poses for his family, it does not rise to the level of an "extraordinary and compelling reason" justifying release.

### 2. Rehabilitation

In support of his compassionate release request, Defendant submits numerous documents to demonstrate his rehabilitative efforts while in prison. (ECF No. 32 at 77-81, 83-98.) The 2023 revisions to § 1B1.13(d) provide:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d), p.s. (Nov. 2023).

Inasmuch as this Court has determined Defendant has not sufficiently established an extraordinary and compelling reason for his early release by reason of his family circumstances, Defendant's rehabilitation achievements cannot suffice to bridge

12

this gap.  See United States v. Bledsoe, No. 22-2022, 2022 U.S. App. LEXIS 23011, at *3-4 (3d Cir. Aug. 18, 2022) (a "[defendant's] claimed efforts in furtherance of rehabilitation, while commendable, are 'expected,' they are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of the compassionate-release standard[.]").

### 3. "Other Reasons"

In the newly enacted Policy Statement to USSG § 1B1.13, a court may consider "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)."  U.S. Sent'g Guidelines Manual § 1B1.13(b)(5), p.s. (Nov. 2023).

As discussed in depth above, Defendant seeks compassionate release on the basis of his mother's need for a caregiver. Defendant has gone to great lengths to establish this need, as well as show the court the progress he has made during the short time he has been incarcerated.  Defendant's achievements are commendable and the court is pleased to see the progress he has made since his arrest in 2021.[5]  However, the court finds

---

[5]  As discussed above, Defendant was granted bail and was not required to surrender to begin serving his sentence until February 15, 2022.  As such, Defendant has served less than half his sentence thus far.

13

Defendant has presented no "other reason" that on its own or in combination with the foregoing, could constitute an extraordinary or compelling reason for a reduction in sentence.

### 4. Continued Analysis

Defendant's failure to establish an extraordinary and compelling reason for a reduction in sentence renders moot any need to assess the § 3553 factors or Sentencing Commission Policy Statements, beyond those discussed above. See United States v. Garcia, Crim. No. 21-884, 2023 U.S. Dist. LEXIS 186930, at *15 (D.N.J. Oct. 18, 2023) (because the defendant failed to establish "extraordinary and compelling reasons for compassionate release . . . the Court need not consider whether early release would comport with the factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a)."); United States v. Pray, Criminal Action No. 14-55-1, 2022 U.S. Dist. LEXIS 124497, at *2 (E.D. Pa. July 14, 2022) (inmate's sentence may only be reduced if all three criteria are met: (1) a finding of extraordinary and compelling reasons; (2) § 3355 factors warrant reduction; and (3) a reduction "is consistent with applicable policy statements issued by the Sentencing Commission.").

### B. Home Confinement

Plaintiff submits that if this Court does not find extraordinary and compelling reasons for his compassionate release request, it should grant his request for "community

14

reentry (halfway house/home confinement)."  (ECF No. 32 at 14); see also ECF No. 32 at 23 ("In lieu of a sentence reduction, I ask the Court to consider accelerating my reentry process, to move my date forward a few months, so that I can reenter the community now (and not delay until October, 2024.)").  In support of this argument, he provides documentation of his prior state criminal record expungement in New Jersey, an offer of employment, and a housing plan.  (ECF No. 32 at 17, 69-70; ECF No. 34 at 3-6.)  The government responds by arguing this Court does not have the authority "to direct BOP to place a defendant in home confinement."  (ECF No. 33 at 6.)  The government is correct.

Pursuant to 18 U.S.C.S. § 3624, determinations regarding the release of a prisoner from incarceration are within the sole discretion of the Bureau of Prisons ("BOP").  See also Collins v. Warden Canaan FPC, No. 21-2878, 2022 U.S. App. LEXIS 19430, at *3 (3d Cir. July 14, 2022) ("[T]he BOP has exclusive control over an inmate's placement in home confinement."); Perri v. Warden of FCI Fort Dix, Civ. No. 20-13711, 2023 U.S. Dist. LEXIS 9266, at *7 (D.N.J. Jan. 19, 2023) ("[T]o the extent Petitioner seeks a direct order for home confinement, this Court 'has no authority to issue such an order.'") (quoting United States v. Farlow, No. 18-44, 2021 U.S. Dist. LEXIS 61502, at *11 (D.N.J. Mar. 30, 2021)); United States v. Batista, No. 18-0415, 2020

15

U.S. Dist. LEXIS 139068, at *14 (D.N.J. Aug. 5, 2020) ("An application for home confinement is distinct from a motion to reduce the term of imprisonment under Section 3582(c), which does not authorize the Court to dictate the place of confinement.").

Accordingly, Defendant's request to be placed in a halfway house or home confinement will be denied.

## CONCLUSION

For the reasons set forth above, the court will deny Defendant's Motion for Compassionate Release (ECF No. 32).

An appropriate Order will accompany this Opinion.


Dated: 1/29/24          /s/ Noel L. Hillman
Camden, New Jersey      Noel L. Hillman, U.S.D.J.